UNITED STATES BANKRUPTCY COURT  For Publication
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— :
             :
In re          :  Chapter 11
             :
RMM RECORDS & VIDEO CORP.,  :  Case No. 00-15350 (AJG)
             :  (Confirmed Case)
      Debtor.    :
             :
—————————————————————:
             :
RMM RECORDS & VIDEO CORP.   :
             :
     Plaintiff,    :
             :
     v.       :
             :  Adv. Pro. No. 06-01351
UNIVERSAL MUSIC & VIDEO    :
DISTRIBUTION CO.       :
             :
     Defendant.   :
             :
—————————————————————:

OPINION GRANTING MOTION FOR SUMMARY JUDGMENT
AND ADDRESSING MOTION FOR FINAL ENTRY OF JUDGMENT
UNDER FED.R.CIV.P. 54(b)


A P P E A R A N C E S

LABATON SUCHAROW & RUDOFF LLP
Attorneys for Plaintiff
100 Park Avenue – 12th Floor
New York, NY 10017

    Brian D. Caplan, Esq.
    Jonathon J. Ross, Esq.
     Of Counsel


MCKENNA, LONG & ALDRIDGE LLP
Attorneys for Defendant
303 Peachtree Street, Suite 5300
Atlanta, GA 30308

Barry J. Armstrong, Esq.
Robert A. Bartlett, Esq.
Of Counsel

444 South Flower Street, 8th Floor
Los Angeles, CA 90071

James. S. Cochran, Esq.
Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

## I.  INTRODUCTION

This adversary proceeding arises from the non-payment of money due under a promissory note issued by defendant Universal Music and Video Distribution Corporation ("Universal" or "Defendant") to plaintiff RMM Records and Video Corporation ("RMM" or "Plaintiff").  RMM filed for bankruptcy in November 2000, and subsequently sold its assets to Universal in exchange, in part, for money due under the promissory note (the "Note").  Universal refused to pay RMM pursuant to the Note by its maturity date, and RMM brought an action to compel payment.  Universal responded with affirmative defenses and counterclaims for breaches of the asset sale.  The subject of this opinion concerns RMM's motion for summary judgment on its claim for breach of the Note and for entry of a final judgment under FED.R.CIV.P. 54(b).  For the reasons stated below, the Court grants RMM's motion for summary judgment on its Note claim and grants RMM's motion for entry of a final judgment under Rule 54(b) but stays enforcement of that judgment pending resolution of Universal's counterclaims.

## II. BACKGROUND

Summarized below are the facts, drawn from both the pleadings and evidentiary materials in the records. The facts are construed in the light most favorable to Universal, as the party opposing the motion for summary judgment.

RMM was a "pioneering record company in the salsa and Latino music markets" before entering bankruptcy in November 2000 as a result of a civil judgment against it. (Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment on the Promissory Note, Claim ("RMM's Memo.") at 2). To satisfy that civil judgment and its creditors, RMM entered into an Asset Purchase Agreement (the "APA") with Universal, in which RMM agreed to sell its catalog of master recordings and artist agreements to Universal in exchange for cash, Universal's forgiveness of debt, and a Promissory Note (the "Note") by Universal to RMM. (*Id.* at 2). The APA was entered into on April 30, 2001 and closed on August 16, 2001. (Lehman Aff. ¶¶ 3, 8).[1]

The APA contains the following clause, Section 11(d), addressing Universal's offset rights

> Buyer's Offset Rights. At Buyer's option, Buyer may, at any time and from time to time on or before the Maturity Date of the Note, offset any amount due to it from Seller pursuant to Section 11(c) by reduction of the then outstanding amount of the Note, including the principal thereof and any accrued and unpaid interest thereon . . . .

Section 11(c) contains an indemnification clause.[2]

---

[1] The Lehman Affidavit is deemed to be the Complaint, as ordered by this Court on March 9, 2006, 00-15350(AJG), Doc. # 290. Before commencing the Adversary Proceeding, the Plaintiff sought relief via a Notice Motion in its Chapter 11 bankruptcy proceeding. Universal objected that because monetary relief was sought, the motion should have been brought as an adversary proceeding. The Court agreed and converted the motion to an adversary proceeding.

[2] Section 11(c)(i) states in part

> . . .Seller [RMM] agrees to fully indemnify and hold harmless Buyer [Universal] . . . against and in respect of any all liabilities, losses, damages, deficiencies, costs and expenses (including the reasonable fees and expenses of investigation and counsel) (collectively, "Losses") arising out of

In connection with the APA's closing, on August 16, 2001, Universal issued to RMM the Note in the principal amount of $1,300,000 and containing an interest rate of 5% and a maturity date of August 16, 2002. The Note contains a choice of law provision at paragraph 8, stating that New York law governs its construction. The Note, at paragraphs 3-4, confirms that it is subject to all terms of the APA and to Universal's right of offset pursuant to Section 11(d) of the APA.[3]

On March 29, 2002, this Court entered its order confirming the Debtor's Chapter 11 plan of liquidation, pursuant to which all of RMM's creditors were paid in full. (Order Confirming Joint Plan Chapter 11 Plan of Liquidation, 00-15350(AJG), Doc. # 184).

Several issues arose post-APA between the parties that resulted in the parties entering into a stipulation modifying the APA on February 5, 2003 (the "Stipulation"). The Stipulation extended the maturity date of the Note[4] and provided for Universal to make an immediate payment to RMM under the Note in the amount of $267,495.95 plus accrued interest. The Stipulation also provided for an offset that further reduced the outstanding principal of the Note by more than $700,000 to $401,500. The bulk of the reduction, $584,180, was for "returns liability" – stemming from the issuance of credits

---

or resulting from (A) any misrepresentations or any breach of the representations, warranties, covenants and agreements made or deemed made by Seller in or in connection with this Agreement, (B) any breach of any covenant or agreement made by Seller in this Agreement or in any certificate furnished to Buyer in accordance with this Agreement or in any certificate furnished to Buyer in accordance with this Agreement or in connection with the transactions contemplated by this Agreement, (C) any Excluded Liabilities, and (D) any actions, suits, proceedings, investigations, claims, demands, assessments and judgments incidental to the foregoing or the enforcement of such indemnification.

[3] The Note provides at paragraphs 3-4 that

This is the Note referred to in Section 3(a)(iii) of, and is subject in all respects to the terms of, that certain Asset Purchase Agreement, dated as of April 30, 2001, between [Universal] and RMM . . . the terms and conditions of which are incorporated herein by reference. . .

This Note and the amounts due to RMM hereunder are subject in all respects to [Universal's] right of offset pursuant to the terms of Section 11(d) of the [APA].

[4] It is undisputed that the Stipulation operates to extend the maturity date of the Note to October 31, 2003. (*See* Defendant's Response to Plaintiff's Statement of Material Facts in Support of its Motion for Summary Judgment on the Promissory Note Claim, Rule 7056-1 statement, ("Defendant's 7056-1 Response") ¶ 13).

4

to customers by Universal for the customers' returns of records sold or distributed for

sale prior to the closing of the APA (August 16, 2001) and returned through the first

anniversary of the closing (August 16, 2002). (Defendant's Response to Plaintiff's

Motion for Summary Judgment ("Defendant's Response Memo.") at 5; Lehman Aff. ¶

14). The Stipulation also provided Universal with three additional set-offs relating to the

then-unresolved claims, referred to by the parties as the "UMLA," "DAM," and "BMG

Direct" claims. (Lehman Aff. ¶ 16). Only the BMG Direct set-off claim arose by the

expiration date of the Note's Maturity. (*Id.* at ¶¶ 17-18). Regarding the BMG Direct

claim, the Stipulation entitled Universal to offset up to $80,000 plus accrued interest due

under the Note. The Stipulation stated

> In lieu of [Universal] further reducing the outstanding amount of the
> Note by such amount as [Universal] deems appropriate under the
> provisions of Section 11 of the Asset Purchase Agreement in order to
> resolve some or all of the Unresolved Claims, the Debtor agrees that . .
> .(iii) with respect to the BMG Direct Claims, [Universal] shall be
> entitled to offset up to $80,000.00 under the Note (plus accrued
> interest thereon) in order to recover that amount equal to the aggregate
> amount of royalties that would have been payable to [Universal] for
> the semiannual accounting periods [from December 2001 to June
> 2003] if there had been no unrecouped balance under the BMG Direct
> Agreement.

Stipulation (Defendant's Response to Plaintiff's Motion for Summary Judgment, Cochran

Decl. part IV, Exh. I).

On October 31, 2003, the Note's date of maturity, Universal notified RMM in a

letter by its counsel, James S. Cochran, (the "Cochran Letter," attached to the Complaint

as Exhibit E), that with respect to the BMG Direct claim Universal was offsetting the

$80,000 plus accrued interest due under the Note, leaving a balance due under the Note at

$332,841.80. (Lehman Aff., ¶19). In the Cochran Letter, Universal also notified RMM

that because of RMM's breaches of the APA and related third-party claims against

5

Universal, Universal could incur losses or damages "perhaps well in excess" of the
amount due on the Note. (Cochran Letter, ¶ 4). Universal simultaneously advised RMM
that, although $332,841.81 was otherwise payable under the Note, it would not make a
payment of the balance due on the Note because of third-party claims by Celia Cruz's
estate that reduced the amount due to zero dollars. (Cochran Letter, ¶ 5).

On March 15, 2006, RMM filed this complaint in the adversary proceeding, seeking
primarily three claims for relief. First, RMM's complaint seeks payment on the Note. The
other two claims are not subjects of RMM's motion for summary judgment and will not be
addressed herein.[5]

Universal filed its answer and counterclaims on March 27, 2006. Universal contends
that its counterclaims entitle it to setoff or recoupment and act as affirmative defenses to
payment of the outstanding amount of the Note. The counterclaims allege that RMM has
breached obligations under the APA. The four categories of counterclaims are (1) the
Additional Returns Liability Amount claim, (2) the Celia Cruz claim, (3) the Malpractice
claims, and (4) BMG Direct claims. (Defendant's Response Memo. at 5).

On May 15, 2006, RMM moved for summary judgment on its Promissory Note claim
against Universal in the amount of $332,841.81 plus applicable interest from the Note's
maturity date.

In response to RMM's motion for summary judgment, Universal contends that
since the APA and the Note are inextricably intertwined, under New York law, its
counterclaims act as defenses against, and preclude entry of, summary judgment.
Universal contends that RMM's attempt to focus just on the Note is "designed to frustrate

---

[5] RMM's complaint also seeks resolution of a dispute related to the audit of Universal's books and records
done in accordance with the APA. In its third claim, RMM seeks an order compelling Universal to produce
documents and appear for a deposition in connection with the audit dispute.

Universal in its efforts to recover damages" for its counterclaims regarding RMM's alleged breaches of the APA. Universal also urges the Court to look at the practicalities of the situation in that if RMM is granted judgment on the Note, it would "unlikely have any funds [later] to pay a judgment on the counterclaims." (Defendant's Response Memo. at 2).

RMM asserts that the Additional Returns Liability claim and Malpractice claims were not asserted prior to the maturity of the Note, and thus are barred by the express provisions of the APA. (Plaintiff's Reply Memorandum of Law In Support of Summary Judgment on the Promissory Note Claim ("Plaintiff's Reply Memo.") at 4 ("it is patently clear that the relevant agreements do contain specific express language restricting Universal's ability to claim offsets against the Note to those asserted prior to the Note's maturity"). RMM further asserts that "New York law does not permit contingent or speculative claims to be used to offset monies due under a Promissory Note," and thus that the "purely speculative" Celia Cruz, Malpractice, and Additional Returns Liability claims are barred. (RMM's Memo. at 11, 13). With respect to the BMG Direct claim, RMM argues that the Stipulation firmly resolved this claim. RMM characterizes the counterclaims in sum as "a transparent attempt to avoid having to pay the remainder of the Purchase Price for RMM's valuable catalog of recordings and artist agreements." (*Id.* at 7).

A hearing was held on July 26, 2006.

### III. LEGAL STANDARDS

A. Summary Judgment

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . ." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323-24 (1986). Under Federal Rule of Civil Procedure 56(c), made applicable

to this proceeding by Federal Rule of Bankruptcy 7056, summary judgment is only

appropriate where the record shows that "there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." *See* FED.R.CIV.P.

56(c); *see also Celotex Corp*, 477 U.S. at 322. A genuine issue of material fact exists

where "there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In

determining whether such an issue exists, "the court is required to resolve all ambiguities

and draw all permissible factual inferences in favor of the party against whom summary

judgment is sought." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.

1997). A motion for summary judgment is appropriate to decide an action for recovery

on a promissory note. *See Camofi Master LDC v. College Partnership, Inc.*, 452 F. Supp.

2d 462, 470 (S.D.N.Y. 2006); *see also Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y.

2001) ("Cases seeking recovery on promissory notes are particularly suitable for

disposition via summary judgment, as the moving party need merely establish the

absence of a genuine issue as to execution and default.").

Regarding contract disputes, the Second Circuit has further stated that if a court

finds that a "contract is not ambiguous it should assign the plain and ordinary meaning to

each term and interpret the contract without the aid of extrinsic evidence" and it may then

award summary judgment. *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309

F.3d 76, 83 (2d Cir. 2002) (citation omitted). The ambiguity of a contract "is a threshold

question" for the Court. *See Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 142

(S.D.N.Y. 2004). "The existence of an ambiguity depends on whether there is a

reasonable basis for difference of opinion as to the meaning of the contract." *Id.*

"Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Compagnie Financiere De CIC Et De L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) (citations and quotations omitted). However, a contract is not made ambiguous "simply because the parties urge different interpretations." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

To defeat a proper summary judgment motion, the opposing party "'may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (citing Rule 56(e)). The opposing party "cannot defeat the motion by relying on the allegations in his pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996); *see also Anderson*, 477 U.S. at 252 (the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient"); *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) ("reliance on conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion").

B. Breach of Obligation to Make a Payment Pursuant to Promissory Note

To make out a *prima facie* case for recovery for breach of obligation to pay under a promissory note, the plaintiff simply must show proof of the note and the defendant's failure to pay by its maturity date. *See Camofi Master*, 452 F. Supp. 2d at 470. "When a note holder has established a *prima facie* claim, the burden shifts to the defendant to prove the 'existence of a triable issue of fact in the form of a bona fide defense against

the note." *Id.* (citations omitted).  It is well settled under New York law that conclusory

allegations as to the defenses do not suffice to defeat a summary judgment motion for

payment of a promissory note  *See, e.g., Lavelle v. Urbach, Kahn & Werlin, P.C.,* 604

N.Y.S.2d 614, 615 (3d Dep't 1993) ("it is well settled that proof showing the existence of

a triable issue of fact with respect to a bona fide defense against the note will defeat a

CPLR 3213 motion");[6] *Quest Commercial, LLC v. Rovner,* 825 N.Y.S.2d 766 (2d Dep't

2006); *Coladonato v. Tutto Pizza,* 664 N.Y.S.2d 524 (1st Dep't 1997); *Money Store of*

*New York, Inc. v. Kuprianchik,* 658 N.Y.S.2d 1019, 1020 (2d Dep't 1997) ("The plaintiff

established a prima facie case that it was entitled to summary judgment by proving the

existence of the note, the defendant's guaranty of the note, and the defendant's default in

payment of the note after due demand.  The defendant's conclusory and speculative

assertions that the underlying loan was discharged or modified, thereby negating his

guarantee, were insufficient to raise a triable issue of fact and defeat the plaintiff's

motion."); *Bennell Hanover Assocs. v. Neilson,* 627 N.Y.S.2d 439, 441 (2d Dep't 1995)

("To preclude the plaintiff from enforcing the terms of the note, it became incumbent

upon the defendant to establish, by admissible evidence, that a triable issue of fact

existed.  Although the defendant alleged that there were valid affirmative defenses,

including fraud in the inducement and lack of consideration, those allegations amounted

to no more than unsupported, conclusory assertions which were not sufficient to defeat

the motion."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Keenan,* No. 93 Civ.

---

[6] Section 3213 of the New York State Civil Practice Law and Rules ("CPLR"), allows for motions for
summary judgment in lieu of a complaint.  *See Meding v. Receptopharm, Inc.*, 462 F.Supp.2d 348-49
(E.D.N.Y. 2006).  The section "is peculiar to New York State practice and aims to allow expedited
resolution of actions based on promissory notes, judgments, or accounts stated."  *Id.*  In this proceeding,
"courts are reluctant to allow counterclaims, and often require that they be brought in a new, separate
lawsuit so as not to delay the resolution of the CPLR § 3213 motion."  *Id.* at 349 (citing CPLR 3213,
Official Commentary C3213:17 (McKinney's 2004)).

6784(LLS), 2005 WL 736233, at *2 (S.D.N.Y. Mar. 31, 2005) (conclusory assertions in opposition to a summary judgment motion did not raise a triable issue of fact in the form of a bona fide defense against the note); *Camofi*, 452 F. Supp. 2d at 471 ("To establish a bona fide defense, the defendant may not rely on conclusory allegations, but instead must show by admissible evidence 'a genuine and substantial issue rebutting holder's entitlement to payment.'") (citation omitted).

## IV.  DISCUSSION

### A.  Motion for Summary Judgment on Note

The determination of whether to grant RMM's motion for summary judgment turns on whether Universal has valid defenses to its non-payment of the Note.  As a reasonable jury could only conclude that RMM has established a *prima facie* case for payment – proof of the Note and Universal's failure to make payment by its maturity date, the burden accordingly shifts to Universal to present evidence from which a reasonable jury could find a bona fide defense to payment.  A "stringent standard" applies to evaluating a defense to negotiable instruments in cases such as this one made among sophisticated business people.  *See Camofi Master*, 452 F. Supp. 2d at 471.  As stated above, Universal cannot rely on conclusory allegations to establish a bona fide defense "but must show by admissible evidence 'a genuine and substantial issue rebutting holder's entitlement to payment." *Id.* (citation omitted).  Universal argues that its counterclaims act as defenses to non-payment.  Each counterclaim's applicability as a bona fide defense must be addressed in turn.  But first, the Court must discuss the effect of the intertwinement of the Note and the APA.

### B.  The Intertwinement of the Note and the APA

Universal argues that "[w]here a defense to a promissory note is premised on provisions of a related but separate agreement, the court will consider the two agreements 'intertwined,' and therefore sufficient to demonstrate 'the existence of a triable issue of fact with respect to a bona fide defense.'"  RMM replies that, to defeat its motion for summary judgment, the intertwinement the Note and APA is not sufficient; rather, the intertwined agreements must raise a triable issue of fact as to a bona fide defense.

While it is the general rule that the alleged breach of a related but independent contract will not defeat a summary judgment motion on a promissory note, *see, e.g.*, *Logan v. Williamson & Co.*, 409 N.Y.S.2d 883, 885 (4th Dep't 1978), an "alleged breach of a related but independent contract" can defeat a motion for summary judgment in lieu of complaint where the instrument and the contract are sufficiently intertwined.  *See, e.g., Corvetti v. Hudson*, 676 N.Y.S.2d 263 (3d Dep't 1998).  The court in *Logan* provided helpful analysis of the relationship of counterclaims and section 3213

> The CPLR makes no reference to the disposition of counterclaims asserted on a section 3213 motion for summary judgment. Certainly it would be inconsistent with that section's purpose to delay entry of plaintiff's judgment because defendant asserted an unrelated and *unliquidated* claim *upon which it was not clearly entitled to relief*. In such cases, in the absence of special equities, the counterclaim should be dismissed by the court to be the subject of a separate action. A related counterclaim arising from the same transaction stands on firmer ground, however, and *may* preclude plaintiff's motion for summary judgment.

*Logan*, 409 N.Y.S.2d. at 885 (emphasis added).

Although it is apparent that the Note and APA are "intertwined,"[7] a review of

---

[7] The APA and the Note refer to each other, were negotiated simultaneously, and language in Note indicates its connection to the APA.  Section 3 of the APA states that the Note is part of the "purchase price" of the APA.  (APA, § 3(a)(iv)).  The Note expressly incorporated all terms of the APA at paragraph 3, stating "[t]his is the Note referred to in Section 3(a)[(iv)] of, and subject in all respects to the terms of, that certain Asset Purchase Agreement, dated as of April 30, 2001, between [Universal] and RMM . . . the terms and conditions of which are incorporated herein by reference."  *Compare Camofi Master*, 452 F. Supp. 2d at 475 (The court found banking agreement and Notes to be separate agreements because "[r]ather than being executed simultaneously, the Notes and Banking Agreement were completed at different times,

New York cases shows support for RMM's position that intertwinement is not sufficient on its own. For example in *Eurotech Dev. Inc. v. Adirondack Pennysaver Inc.*, 636 N.Y.S.2d 956 (3d Dep't 1996), the court held that the purchase agreement and promissory note were sufficiently "intertwined" to render the grant of summary judgment on the note premature as "it appears that defendants may be entitled to rescission of the purchase agreement if their allegations of fraud in the inducement or failure of consideration can be proven." Thus, triable issues of fact existed. *Id.* In *Regal Limousine, Inc. v. Allison Limousine Serv., Ltd.*, 523 N.Y.S.2d 154 (2d Dep't 1988), the court denied a motion for summary judgment where the contract and underlying obligation were "intertwined." The court noted that a customer list referred to in the parties' agreement for the sale of Allison's limousine business formed an integral part of the proffered consideration and that allegations of fraudulent misrepresentations regarding it thus precluded summary judgment. *Id.* at 155. In *A+ Assoc. Inc. v. Naughter*, 654 N.Y.S.2d 44 (3d Dep't 1997), the court agreed with the defendant that a significant portion of the consideration that defendant was to receive in exchange for the promissory note was plaintiff's covenant not to compete. "As such, the promissory note was inextricably intertwined with the obligations contained in the purchase agreement and, therefore, summary judgment was inappropriately granted." *Id.* at 44-45. There, the defendant, who had begun making monthly payments in accordance with the terms of the promissory note, stopped after learning that the plaintiff violated the non-compete agreement and the defendant commenced an action against the plaintiff for breach of contract. *Id.* at 45. In *Ssangyong (U.S.A.) Inc. v. Sung Ae Yoo*, 451 N.Y.S.2d 90 (1st

---

and signed by different people and parties" and "[n]either the Notes nor the Banking Agreement incorporates the terms of the other by reference").

Dep't 1982), the plaintiff commenced a motion for summary judgment in lieu of a

complaint pursuant to § 3213.  *Id.* at 90.  The plaintiff and defendants, importers, had

entered into an agreement whereby the defendants agreed to buy the plaintiff's furniture.

*Id.* at 90.  The parties executed two promissory notes shortly after entering into the

agreement.  *Id.* at 90.  After delivery, the defendants notified the plaintiff that the goods

were defective and non-conforming and thus the defendants did not make full payment

on the notes.  *Id.* at 91.  The Appellate Division found that summary judgment in the

plaintiff's favor was inappropriate as "a fundamental question exists as to whether the

agreement between these parties can be viewed as being distinct and separate from the

notes."  *Id.*  The court also noted that the defendants had alleged "sufficient facts" of

fraud in the inducement.  *Id.*  A common thread in all the cases, then, is that the

defendants raised triable issues of fact regarding a defense.

The defendant's cited case of *Lavelle v. Urbach, Kahn & Werlin, P.C.*, 604

N.Y.S.2d 614, 615 (3d Dep't 1993), is instructive.  There, the court held that summary

judgment was inappropriate as to the promissory note.  The defendant corporation, upon

termination of plaintiff's employment, executed a promissory note agreeing to pay the

plaintiff $28,152 in severance pay in accordance with the parties' contract, the "Master

Agreement."  *Id.*  One of the corporation's defenses to the note was that the Master

Agreement's anti-competitive provisions permitted reductions or offsets to the amount

due the plaintiff because of plaintiff's competition with the defendant.  The court found

that this raised a triable issue of fact with respect to the bona fide defense "given the fact

that the Master Agreement and the promissory note are intertwined."  The court's holding

was *not* that merely because the Master Agreement and the promissory note were

intertwined, any defense would preclude summary judgment on the note claim.  The

14

holding was that summary judgment was inappropriate because (1) the Master

Agreement and the promissory note were intertwined, and (2) the defense, which had its

source in the Master Agreement, raised an issue of fact, helped in part by the

intertwinement.

It should also be noted that New York state cases that discuss "intertwinement" in

CPLR § 3213 actions do not seem entirely applicable – section 3213 actions are

streamlined, expedited proceedings as no complaint needs to be filed, the ability to bring

counterclaims is limited by statute, and discovery is generally stayed.  *See Meding*, 462 F.

Supp. 2d at 349.  Therefore, the issue of counterclaim viability is more important because

the defendant opposing payment on the note may not be able to pursue its claim as a

counterclaim.  However, when a section 3213 case is brought in federal court the Federal

Rules govern the summary judgment procedure and the bringing of counterclaims.  *See

Com/Tech Commc'n Tech., Inc. v. Wireless Data Sys., Inc.*, 163 F.3d 149, 151 (2d Cir.

1998).

It is apparent that the Note and APA are "intertwined" but as shown above that is

not dispositive.  Rather, Universal still must raise a triable issue of fact with regard to a

bona fide defense.  In *Camofi Master*, the court found that the promissory notes and a

banking agreement were separate contracts and thus that a defense predicated on

fraudulent inducement to defendant's entering the distinct contract of the banking

agreement did not excuse defendant's nonpayment under the notes.  452 F. Supp. 2d at

474.  However, besides the unrelated nature of the agreement and the notes, the court also

found a separate reason for the defense to fail – defendant's "fraud defense also fails

because it is not based on misrepresentation of existing fact" and its allegations "are

merely conclusory."  *Id.* at 476.

C.  Universal's Counterclaims

Universal asserts that its counterclaims regarding RMM's breaches of the APA both entitle it to affirmative relief and act as affirmative defenses to payment of the outstanding amount of the Note.  RMM contends that there is no factual dispute that any of the counterclaims can bar summary judgment on the note.

1.  *Additional Returns Liability Amount claim*

Universal's first counterclaim concerns records sold or distributed prior to the APA closing.  If any records were returned to Universal after the APA closing, the APA directed Universal to accept the returns, issue credits, and treat the credits as amounts for which RMM would indemnify Universal.  Prior to entering the Stipulation, Universal estimated the amount of credits for post-closing returns to be $584,180.  But based on information it learned after entering the Stipulation, Universal determined that the correct amount was not less than $794,020,[8] or $210,000 more than the estimate stated in the Stipulation.  RMM contends that Universal has waited too long to assert this claim.  RMM notes that Section 11(d) of the APA states that Universal may offset against the Note "at any time and from time to time on or before the Maturity Date of the Note" any amount due under the indemnity provisions of Section 11(c) of the APA.  RMM contends that there is no factual dispute that this claim was not asserted prior to the Note's maturity date as the APA demands.  RMM acknowledges that this claim should be resolved as part of the "Audit Dispute" but that it cannot be used to offset Universal's liability under the Note.

---

[8] In three different pleadings or declarations, Universal identifies three different amounts.  The $794,020 amount is from Defendant's Response Memo. at 6, dated June 5, 2006.  Universal's Answer of January 18, 2006, listed the Returns Liability Amount as $1,567,608.  (Answer at 61, ¶ 18); Earl Little, Universal's Director of Financial Reporting, said that "thus far" (presumably as of June 5, 2006) $668,851 had been identified and Universal was continuing to review.  (*See* Defendant's Response Memo., Little Decl., Appendix # 5).

16

RMM asserts that the Cochran Letter of October 31, 2003 (the Note's maturity date) did not mention any other offsets aside from the Celia Cruz claim. Universal disputes this and states that the letter claims that other breaches "may have occurred." (Defendant's 7056-1 Response at ¶ 12) and further argues that the letter "expressly stated that it was not intended as an exhaustive list of RMM's breaches, and Universal reserved its rights to raise additional breaches at a later date."

The Court finds that the Additional Returns Liability Amount claim does not raise a triable issue of fact regarding a bona fide defense to the Note claim. Contrary to Universal's interpretation of the Cochran Letter, the letter did not operate to assert an offset regarding additional returns before the Note's maturity date. On page three of the letter, Universal's counsel wrote that the defendant may suffer damages "by reason of the various breaches by RMM of its representations and warranties under the Asset Purchase Agreement . . . with respect to the Celia Cruz Master." There is nothing to suggest that other breaches may have occurred, particularly any that involve the additional returns. Further, the APA required Universal to offset an amount by the Note's maturity date and to provide prompt, written notification to RMM of any such reduction. A vague reference on the Note's maturity date to possible future offsets because of "other breaches" would not meet Section 11(d)'s requirement.

## 2. *Celia Cruz claim*

In the Celia Cruz claim, Universal claims that RMM made misrepresentations in the APA when it agreed to sell all of its assets to Universal. Universal claims that RMM represented that it had a legal and binding written agreement with Cruz, a performing artist, as well as good title and ownership rights to her recordings. After the APA's closing, Universal alleges Cruz's estate notified it that it did not have rights to Cruz's

17

recordings.  RMM argues that the Cruz claims are lacking or premature, noting that

Cruz's estate has apparently not pursued any claim, stating that "[t]o RMM's knowledge,

other than the exchange of a few pieces of correspondence between Universal and the

Estate of Celia Cruz in the summer of 2003, the purported claim by [Cruz] has not been

pursued, and Universal continues to have and to exercise the unfettered right to

commercially exploit the Celia Cruz master recordings which were transferred by RMM

to Universal pursuant to the APA."

RMM contends that under New York law "contingent or speculative claims" such

as the Celia Cruz claim cannot be used to offset monies due under a promissory note.

Additionally, RMM argues that this claim for indemnification is not actionable until an

actual loss has been established.  RMM points out that in the four plus years since

Universal's purchase of RMM's assets, Universal has not presented any proof of actual

damages incurred.  Earl Little, Universal's Director of Financial Reporting, states that

RMM's misrepresentation that its assets included an artist agreement with Celia Cruz has

damaged Universal, although no estimate of damages is given.  Also, Universal claims

that this misrepresentation restricts its ability to sell the Cruz recordings.

The Celia Cruz claim was asserted by the Note's maturity date.  In the Cochran

Letter, Universal's attorney Cochran claimed that the estate of Celia Cruz, through letters and

phone calls, had asserted that Universal did not own rights to the master recordings of Cruz

and "may be liable to the Estate for damages in an unspecified amount."  The letter further

stated that despite Universal's intention to vigorously defend against the claims, it "could be

liable to [Cruz's] Estate for damages that are in excess (perhaps well in excess) of the $442,

841.81 that (subject to [Universal's] legal, equitable and contractual rights) would otherwise

be payable under the Note."

The Court finds that this claim is too conclusory and speculative to entitle

Universal to act as an offset or affirmative defense to payment on the Note.  *See Hutton*

*Const. Co.  v. County of Rockland*, 52 F.3d 1191, 1193 (2d Cir. 1995) ("under New York

law, no liability [for indemnification] existed until it was fixed by a judgment or a fair

settlement").  The analysis is the same regardless of whether the APA can be classified as

indemnification against loss or indemnification against liability.  *See Pfizer, Inc. v.*

*Stryker Corp.*, 348 F. Supp. 2d 131, 150-51 (S.D.N.Y. 2004) ("New York recognizes

agreements that indemnify against loss and those that indemnify against liability.  Under

an agreement to indemnify against loss, a claim does not accrue until the indemnified

party has made a payment, or actually suffered a loss.  A right to indemnification against

liability, however, arises when the party faces a fixed liability, even though it has not paid

the claim and thus suffered no damage.") (footnotes omitted).  Universal has put forth no

evidence that raises a triable issue of fact that shows it faces a fixed liability, let alone a

definitive claim by Cruz's estate.  Universal has not shown any damages, and its

unsupported claim that the purported cloud on the title to Cruz's recording damages

Universal by restricting its ability to sell the Cruz recording is simple conjecture.

3.  *Malpractice claims*

The Malpractice claims contain two different malpractice claims.  In the first,

Universal alleges that it is entitled to indemnification for its legal expenses, $152,000,

spent to enforce its rights to RMM's pre-petition legal malpractice claims (the "Paterno

Malpractice Claim").  Universal claims that it learned, after the APA closed, that RMM

had commenced a civil action against former attorneys for pre-petition legal malpractice.

In that malpractice action, RMM took the position that it owned the pre-petition legal

malpractice claims and disputed Universal's ownership. Universal then incurred "substantial" legal expenses to dispute RMM's standing to bring the claims.

In the second, Universal alleges it is entitled to the settlement of a separate RMM pre-petition legal malpractice claim (the "Castellanos Malpractice Claim"). RMM and the Castellanos Law Firm had agreed to settle the malpractice claim for, among other considerations, a reduction of Castellanos' legal bills by $38,000. Universal argues that this reduction is an asset that it owned under the APA.

Regarding both Malpractice claims, RMM contends that Universal has waited too long – past the maturity date of the Note – to assert the indemnification claims as offsets to or defenses against the Note. RMM points to Section 11(d) of the APA, that states that Universal may offset against the Note "at any time and from time to time on or before the Maturity Date of the Note" any amount due under the indemnity provisions of Section 11(c) of the APA. RMM contends that there is no factual dispute that this claim was not asserted prior to the Note's maturity date as the APA demands.

Universal contends that Section 11(d) does not limit the time period for it to exercise its offset rights. Universal claims that the section's language is permissive ("Universal *may* offset any amount owed to it by RMM prior to maturity") not mandatory ("Universal *must* offset any amount owed to it by RMM prior to maturity"). This strained interpretation fails. The clear and unambiguous meaning of such language is that Universal's choice to offset was discretionary but that, if it chose to offset against the Note, it must do so prior to the Note's maturity. The language of "at any time and from time to time on before the maturity Date of the Note" is a clear and unambiguous express limitation on when Universal can choose to offset. Otherwise, the parties would have simply stated "Universal may at any time . . . ." Furthermore, such a modification of the

20

right to offset operates to limit Universal's defenses to the summary judgment motion on

the Note.  *See, e.g., Perlstein v. Kullberg Amato Picacone*, 550 N.Y.S.2d 883, 884 (1st

Dep't 1990) (defendants' waiver of offsets, defenses or counterclaims barred them from

asserting failure of consideration as a defense).  The *Perlstein* case further stated that

"[w]hile defendants' claim could perhaps serve as the basis of a breach of contract action,

the waivers contained in the promissory note bar defendants from asserting the alleged

failure of consideration to avoid summary judgment for failure to make payments under

the promissory note."  *Id.  See also PGA Marketing Ltd. v. Windsor Plumbing Supply,

Inc.*, 507 N.Y.S.2d 721, 722 (2d Dep't 1986) ("the promissory notes contained explicit

waivers of the right to assert any defense, offset or counterclaim against the notes" and

although "the waiver would not preclude a defense of fraud, the evidence in the record,

taken most favorably to the defendant, does not support a claim of active intentional

conduct required to support a fraud defense and is too vague to withstand a motion for

summary judgment"); *Tradition North America, Inc. v. Sweeney*, 518 N.Y.S.2d 982, 985

(1st Dep't. 1987) (holding that defendant was "similarly barred by the terms of the notes

from asserting counterclaims and defenses" as each note provided that "[a]ll amounts

payable in respect of this note shall be paid without counterclaim, setoff, deduction,

defense, abatement, suspension or deferment. . . . Under New York law Sweeney is

barred by the express terms of the notes from asserting these counterclaims."); *Aaron v.

Mattikow*, 146 F. Supp. 2d 263, 266 (E.D.N.Y. 2001) ("To be sure, such waiver clauses

do serve to invalidate certain defenses in an action to enforce a promissory note").

    Thus, while a claim for indemnity for the Malpractice claims can survive as a

counterclaim in this action, to be used as an offset and thus as a bona fide defense to the

Note, it must have been made by October 2003, which it was not.

### 4. *BMG Direct claim*

A license agreement between BMG Direct and RMM became an asset of

Universal through the APA.  Universal alleges that, as part of the APA, RMM

represented that there was no unrecouped balance due on the license agreement.  After

the APA's closing, Universal alleges that it discovered that the BMG Direct agreement

was subject to an unrecouped balance of approximately $256,923.71.  In their Stipulation,

the parties agreed "to resolve the . . . BMG Direct claim."  (Stipulation, ¶ 9).  RMM

agreed that that Universal would be entitled to offset up to $80,000 plus interest against

the Note with respect to BMG Direct claims so that Universal "could recover that amount

equal to the aggregate amount of royalties that would have been payable to [Universal]

for the semiannual accounting periods ending December 31, 2001, June 30, 2002,

December 31, 2002 and June 30, 2003 if there had been no unrecouped balance under the

BMG Direct Agreement."  (*Id.*, ¶ 9(b)).  After entering into the Stipulation, Universal

argues that the final accounting statement BMG Direct provided to Universal showed that

"BMG Direct actually accrued $233,128.28 to Universal's royalty account" instead of the

estimated $80,000 in royalties.  If there had been no unrecouped balance, a total of

$233,128.28 would have been paid to Universal.  (Cochran Decl., ¶ 27).[9]  Thus,

Universal alleges that its damages from RMM's breach equal at least $147,637.86, plus

interest – $233,128.28 minus the $80,000 plus interest that Universal offset against the

Note's balance on October 31, 2003 pursuant to the Stipulation.  (Answer and

Counterclaim, at 59 ¶¶ 9-11.).  Universal argues that it did not waive its rights under the

APA or the Stipulation to proceed against RMM for the additional royalties.

---

[9] The Court notes that it is unclear from where the $233,128 figure arises.  It is not a figure easily drawn
from Cochran Decl., Ex. I, which purports to state the final accounting statement.

RMM disputes that argument and claims that the BMG Direct claim was settled in the Stipulation. The Court agrees. In the Stipulation, Universal bargained for and received an offset of $80,000 plus accrued interest for the then unresolved BMG Direct claim. The offset was according to the Stipulation "in lieu of any further right to offset against the Note." Further, as stated above, the parties clearly expressed a desire to settle the BMG Direct claim in the Stipulation. Such unambiguous language can only be read to mean that Universal intended to settle the BMG Direct claim with finality, and without the ability to assert further offsets against the Note. The Court should not remake the parties' agreement by allowing Universal, despite the Stipulation's clear language, to assert a further offset.

   D.   Rule 54(b) Motion

   RMM argues that final judgment on the promissory note claim should be entered immediately pursuant to Rule 54(b), made applicable to this proceeding by Bankruptcy Rule 7054. Rule 54(b) provides in pertinent part

> Judgment upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

   RMM argues that there is no just reason for delay, that Universal should not be permitted to retain money belonging to RMM, and that the Promissory Note claim is "wholly separate from the other claims and counterclaims in this proceeding." In response, Universal cites the Second Circuit's disfavor of Rule 54(b) and the "historic policy against piecemeal appeals." *See Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir. 1992). Universal argues that a proper factor to consider is the "relatedness

of the pending and adjudicated claims."  Furthermore, Universal states that it is more

likely to be harmed by a grant of certification than RMM would be if the Court denied

certification, stating that its counterclaims against RMM may result in damages greater

than the balance of the Note, forcing Universal to "attempt collection from a bankrupt

entity with no apparent assets and no continuing business."

"Rule 54(b) permits certification of a final judgment where (1) there are multiple

claims or parties, (2) at least one of the claims or the rights and liabilities of at least one

party has been finally determined, and (3) 'there is no just reason for delay.'"  *Grand

River Enter. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (citation

omitted).  "Respect for the 'historic federal policy against piecemeal appeals' requires

that such a certification not be granted routinely."  *L.B. Foster Co. v. America Piles, Inc.*,

138 F.3d 81, 86 (2d Cir. 1998) (citation omitted).  In a leading Rule 54(b) case, *Curtiss-

Wright Corp. v. General Electric Co*., 446 U.S. 1, 8 (1980), the Supreme Court stated that

"a district court must take into account judicial administrative interests as well as the

equities involved" in determining whether entry of such a judgment is appropriate.

Administrative interests include "whether the claims under review were separable

from the others remaining to be adjudicated and whether the nature of the claims already

determined was such that no appellate court would have to decide the same issues more

than once even if there were subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8.  The

mere presence of counterclaims does "not render a 54(b) certification inappropriate." *Id.*

at 9.  *See also Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1991)

("Only those claims 'inherently inseparable' from or 'inextricably interrelated' to each

other are inappropriate for rule 54(b) certification.").

In the similar case of *EMI Music Marketing v. Avatar Records, Inc.*, 317 F. Supp. 2d 412, 424 (S.D.N.Y. 2004), the court balanced the equities of Rule 54(b), noting that the plaintiff, EMI, who prevailed on its account stated claim, "has already waited several years to recover most of the amount that [defendant] owes it, and EMI should not have to experience what may be substantial further delay until [defendant] 's counterclaims are finally resolved for it to have legal assurance that it can collect from Defendants the amount to which it is entitled."

The Court takes note of Universal's concern about being forced to "attempt collection from a bankrupt entity with no apparent assets."  Should Universal prevail on its counterclaims, RMM would not likely be able to satisfy a judgment against it.  The last Monthly Operating Report filed by the Debtor shows it had $41,186 in cash as of May 31, 2004.[10]  Furthermore, RMM did not challenge Universal's contentions regarding RMM's "lack of apparent assets" aside from the Note, that RMM no longer conducts any business, and that RMM has no potential sources of revenue.

The Court chooses to follow *EMI Music Marketing's* holding that equitably addresses the issues presented here.  That court held that given the historic policy considerations against piecemeal appeals, "and in view of the remaining disputes still to be resolved and the prospects that EMI's judgment may be reduced by offsets should Avatar prevail on its surviving counterclaims, the Court is persuaded that the most prudent course is to direct the entry of a final judgment on EMI's" claim pursuant to Rule 54(b), but to stay enforcement of that judgment pursuant to FED.R.CIV.P. 62(h) until resolution of the counterclaims."[11]  317 F. Supp. 2d at 424-25.

---

[10]  *See* Monthly Operating Report for May 2004, 00-15350(AJG), Doc. # 252.
[11]  Rule 62(h), made applicable to this proceeding by Bankruptcy Rule 7062, states

**CONCLUSION**

Based upon the aforementioned, RMM's  motion for summary judgment on the promissory note claim is granted.  RMM's motion for entry of a final judgment under Rule 54(b) is granted but enforcement of that judgment is stayed pending resolution of Universal's counterclaims.

RMM should submit an order consistent with this opinion.


Dated:  New York, New York
        June 7, 2007

                              s/Arthur J. Gonzalez
                              UNITED STATES BANKRUPTCY JUDGE

---

[w]hen a court has ordered a final judgment under the conditions stated in Rule 54(b), the court may stay enforcement of that judgment until the entering of a subsequent judgment or judgments and may prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment is entered.