UNITED STATES BANKRUPTCY COURT     For Publication
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| RMM RECORDS & VIDEO CORP., | Case No. 00-15350 (AJG) |
| Debtor. | (Confirmed Case) |
| RMM RECORDS & VIDEO CORP., | |
| Plaintiff, | |
| v. | Adv. Pro. No. 06-01351 |
| UNIVERSAL MUSIC & VIDEO DISTRIBUTION, CORP., | |
| Defendant. | |

OPINION DENYING DEFENDANT'S OBJECTION TO PROPOSED JUDGMENT
ON THE PROMISSORY NOTE CLAIM

A P P E A R A N C E S

CAPLAN & ROSS, LLP
Attorneys for Plaintiff
100 Park Avenue – 12th Floor
New York, NY 10017

       Brian D. Caplan, Esq.
       Jonathon J. Ross, Esq.
          Of Counsel

JENNER & BLOCK LLP
Attorneys for Defendant Universal Music & Video Distribution, Corp.[1]
919 Third Avenue, 37th Floor

---

[1] This party is now known as Universal Music Group Distribution, Corp.

New York, NY 10022

        Andrew H. Bart, Esq.
            Of Counsel


MCKENNA, LONG & ALDRIDGE LLP
Attorneys for Defendant
303 Peachtree Street, Suite 5300
Atlanta, GA 30308

        Barry J. Armstrong, Esq.
        Robert A. Bartlett, Esq.
            Of Counsel

444 South Flower Street, 8th Floor
Los Angeles, CA 90071

        James. S. Cochran, Esq.
            Of Counsel


ARTHUR J. GONZALEZ
United States Bankruptcy Judge


## I.  BACKGROUND

RMM Records and Video Corporation ("RMM") filed for bankruptcy in November 2000 and subsequently sold its assets to Universal Music & Video Distribution, Corp. ("Universal") in exchange, in part, for money due under a promissory note (the "Note").  On August 16, 2001, Universal issued to RMM the Note containing an interest rate of 5% and a maturity date of August 16, 2002, a date the parties later agreed to extend to October 31, 2003.  The Note contains a choice of law provision at paragraph eight, stating that New York law governs its construction.  Universal failed to make payment due under the Note on its maturity date, leading RMM to file suit.  Universal counterclaimed for alleged breaches of the asset sale.

On June 7, 2007, the Court issued its opinion that granted RMM's motion for summary judgment on the promissory note claim, and granted RMM's motion for entry of a final judgment under Rule 54(b), but stayed enforcement of that judgment pending resolution of Universal's counterclaims.

RMM subsequently proposed an order calculating interest on the judgment in the amount of 9% per annum pursuant to N.Y. C.P.L.R. 5004, from November 1, 2003, the day following the Note's undisputed maturity date. Universal objects to RMM's interest rate calculation. Universal argues that the Note's interest rate of 5% should apply to the period between November 1, 2003 and the entry of the order. Universal cites "well settled" New York case law that holds when a contract provides for interest to be paid a specified rate until the principal is paid, the contract's rate of interest, rather than the legal rate set forth in C.P.L.R. 5004, governs until the contract is merged in a judgment.

A hearing was held on July 25, 2007.

## II. LEGAL STANDARDS

The parties do not dispute that New York law governs the issue of pre- and postjudgment interest.[2] New York law provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001. In an action at law for breach of contract, "prejudgment interest is recoverable as of

---

[2] If liability had arisen under the United States Bankruptcy Code, federal law would govern the interest rate. *See, e.g., In re Rosen*, 232 B.R. 284, 298 (E.D.N.Y. 1999). Although 28 U.S.C.A. § 1961 explicitly governs the rate and accrual of postjudgment interest, no federal statute governs the application of interest prejudgment and the determination is entrusted to the trial court judge. *Id.* at 298. When a federal court judgment is based on a state law claim, courts have looked to state law to determine the propriety of prejudgment interest on recovery. *See In re Mills*, 11 B.R. 186 (Bankr. N. Ind. 1988); *see also In re Brace*, 131 B.R. 612, 614 (Bankr. W.D. Mi. 1991) ("[I]f this had been a diversity case, or one grounded on state law, the Michigan interest rate statute would have to be used in the consideration of prejudgment interest."); *Finance One Public Co. Ltd. v. Lehman Bros. Special Financing*, No. 00 Civ. 6739(CBM), 2003 WL 21638214 (S.D.N.Y. July 11, 2003) (although not a bankruptcy case, the federal court, in deciding whether to look to state law for an interest award, stated "[i]t is well settled under Second Circuit law that the 'entitlement to and amount of interest in a breach of contract action is governed by the state law under which the contract is interpreted.'").

3

right." *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 434 (S.D.N.Y. 2004) (citing *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 342 (2d Cir. 1993)). New York's prejudgment interest rate for breach of contract cases is 9% per annum, and accrues on a simple, rather than a compound, basis. *See* N.Y. C.P.L.R. § 5004.

### III. DISCUSSION

Universal, in arguing that the Note's contractual rate of 5% percent should apply to the period after the Note's maturity date and before the entry of judgment, rather than New York's statutory rate of 9%, cites a string of cases represented by *Citibank, N.A. v. Liebowitz*, 110 A.D.2d 615, 487 N.Y.S.2d 368, 369 (App. Div. 2d Dep't 1985), which held that "[i]t is well settled that when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in C.P.L.R. 5004, governs until payment of the principal or until the contract is merged in a judgment." *See also European American Bank v. Peddlers Pond Holding Corp.,* 586 N.Y.S.2d 637 (App. Div. 2d Dep't 1992) ("It is well established that when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the statutory rate set forth in C.P.L.R. 5004, governs until the payment of the principal or until the contract is merged into a judgment.").

RMM argues that the Note's provision that it shall bear 5% interest "to the date this Note shall have been repaid in full" shows that the parties intended for Universal to pay the balance by the maturity date and the 5% interest rate should be extinguished on that date. RMM argues that the statutory date should apply in the absence of a specific provision that identifies the rate of interest to be charged post-maturity.

4

The Court finds that, contrary to Universal's assertions, the Note does not state that the 5% rate shall apply *until the principal is* paid. Rather, the Note provides in part "[t]he aggregate outstanding principal balance of this Note shall bear interest accruing accruing from the date hereof *to the date this Note shall have been repaid in full* at the rate of five percent (5%) per annum." (Emphasis added). The Note is silent as to what rate would apply if Universal did not pay the principal by the maturity date. In other words, there is no default interest rate.[3]

Although Universal asserts the phrase "until the principal is paid" has the same effect as "shall have been paid" regarding the Note, the Court finds them crucially different. The verb phrase "shall have been" is in the future perfect tense. This tense commonly "refers to an act, state, or condition that is expected to be completed before some other future act or time." *See The Chicago Manual of Style*, § 5.121 (15th ed. 2003) (giving as an example "the entomologist will have collected sixty more specimens before the semester ends"); *see also Kane v. Union Mut. Life Ins. Co.*, 445 N.Y.S.2d 549, 554-55 (App. Div. 2d Dep't 1981) (J. Damiani, dissenting) ("Grammatically the future perfect tense is used to indicate that an action or state is to be viewed as completed in relation to a specified time in the future."); *Fex v. Michigan*, 507 U.S. 43, 48 (1993) (use of future perfect tense shows that a triggering event is "is to be completed ('perfected') at some date in the future . . . before some other date in the future that is under discussion");

---

[3] For the omitted term of the default interest rate, the rules of interpretation do not help fill the gap. *See* Joseph M. Perillo, CALAMARI AND PERILLO ON CONTRACTS, 5th Ed. § 3.14 (2003). Thus, the Court should not add a default interest rate that the parties did not themselves intend to include in the agreements. Also, the omitted term of the default interest rate is not essential. "In determining whether omitted terms are essential to a contract, New York courts adopt a flexible approach and look at the 'broad framework' of a contract." *Adjustrite Sys., Inc. v. GAB Business Servs., Inc.*, 145 F.3d 543 (2d Cir. 1998). A term of a default interest rate is not actually essential to make the agreement legally binding. *See Shann v. Dunk*, 84 F.3d 73, 79 (2d Cir. 1996).

5

*People ex rel. Eckerson v. Board of Ed., and Trustees of School*, 110 N.Y.S. 769, 771-72 (App. Div. 2d Dep't 1908) ("'shall have been' is a future perfect tense, for it contemplates an event completed in the future"). The parties' particular usage of the future perfect tense in the Note shows that the 5% rate was to be "completed" by, or to run to, the Note's maturity date. The tense, a tense that contemplates "completion," shows that parties did not intend for the contractual interest rate to continue beyond the Note's maturity date indefinitely, until Universal paid the principal.

This finding is consistent with the contractual interpretation doctrine of "plain meaning." In New York, it is well-settled that a "written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166 (N.Y. 2002). *See Int'l Multifoods Corp. v. Comm'l Union Ins. Co.*, 98 F. Supp. 2d 498, 503 (S.D.N.Y. 2000) ("New York law thus expresses a strong commercial policy for the plain meaning rule of contract interpretation; that which is stated clearly is to be applied clearly."). Here, the parties' unambiguous language shows that the interest rate of 5% was to continue until the Note's maturity date.

Several cases support this conclusion. One from this Court contains similar facts. *See In re Best Payphones, Inc.*, No. 01-15472(SMB), 2003 WL 1089525 (Bankr. S.D.N.Y. Mar. 10, 2003). There, the parties disputed whether the contractual rate or statutory rate should apply to prejudgment interest for a breach of contract judgment. The debtor, advocating for the 9% statutory rate, argued that the contract rate was limited to cases involving foreclosures and promissory notes. The Court ruled against the debtor, finding that although the prevailing interest rate is 9% pursuant to C.P.L.R. 5004, the

6

"parties may nevertheless agree to a different prejudgment rate, and if they do, the contract rate, rather than the C.P.L.R. rate, will apply." *Id*. at *5.

In *Best Payphones*, the relevant portion of the parties' agreement stated that "if any invoice is not paid when due, . . . interest shall accrue on the invoiced amount a monthly rate of one and one half (1.5%) percent . . . beginning on the date payment was due." *Id*. In contrast, as stated above, the Note was silent as to the rate that would apply if Universal did not fully pay the principal by the maturity date.[4]

Another persuasive case is one RMM cites, *Sindelar v. Fritzsch*, 563 N.Y.S.2d 374 (App. Div. 3d Dep't 1990). There, the court cited the Uniform Commercial Code ("U.C.C.") to relieve the defendant from paying a contractual rate (16%) that was higher than the statutory rate. The court stated that "unless it provides otherwise, interest on an instrument runs at the legal rate from the date of accrual of a cause of action on the instrument (citing, U.C.C. §3-122 [4] [b]), the day after maturity in the case of a time instrument. Here, the note made no specific provision for the rate of interest to be charged following maturity. Thus, interest should have been computed from January 10, 1989 [date of note's inception] to April 10, 1989 [maturity date] at the rate of 16%, as provided in the note, and thereafter at the legal rate." *Id*. The court found that the contract rate should apply until the maturity date, and thereafter, as the note was silent as to a post-maturity date interest rate, the legal rate should apply.

Universal attempts to distinguish *Sindelar* in its reply by noting that the note did not expressly provide that contractual interest would be paid until the date the

---

[4] As shown by the number of cases discussing such a situation, cited in this ruling and found in the relevant case law, many parties do not expressly include a default interest rate when they negotiate a promissory note. One reason could be that the parties do not envision a credit-worthy obligor, such as Universal, defaulting.

7

instruments were repaid. Universal states that "[u]nlike [*Sindelar*], the . . . Note [between RMM and Universal] contains an express obligation to pay interest until the Note is fully repaid."[5] The Court, as explained above, finds that Universal's interpretation of this "express obligation" is wrong. There is no express obligation in the Note for Universal to pay only the contractual rate until the Note "is" fully repaid. Universal was obligated to pay the contractual rate until the Note's maturity date. The Note is silent as to what rate would apply after the maturity date.

Additional support for applying the statutory rate to the period after the Note's maturity date is found in *Brady v. Zambrana*, 633 N.Y.S.2d 139 (App. Div. 1st Dep't 1995). In that case, the appellate court determined that the trial court had improperly applied New York's statutory rate of 9% to the period from the date the parties executed the promissory note, June 3, 1987, to the entry of judgment in January 1995. The court determined that the contract rate of 5% should be applied to the period from June 3, 1987 until February 28, 1990, the due date specified in the note. As for after the due the date, "since no provision was made for a default interest rate, the statutory rate of 9% is appropriate." *Id.* at 141. That situation – of a Note not paid on its due date, and containing no default interest rate – is similar to the instant matter.

## IV. CONCLUSION

The Court finds that the Note does not manifest an agreement between the parties that the contractual interest rate of 5% would continue beyond the Note's maturity date until Universal repaid the Note. In the absence of such a provision, New York's

---

[5] Defendant's Reply In Further Support of its Motion for Reconsideration of Order Granting Summary Judgment on Promissory Note Claim and Objection to Plaintiff's Proposed Order, at 3.

8

prejudgment statutory rate of 9% should apply for the period from November 1, 2003 through the date of the judgment's entry.

The Debtor should submit an order consistent with this opinion.

Dated:  New York, New York
            July 31, 2007

                                      **s/Arthur J. Gonzalez**
                                      UNITED STATES BANKRUPTCY JUDGE